**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **LLOG EXPLORATION COMPANY, L.L.C.,** | * | **CIVIL ACTION NO.:** |
| **Plaintiff** | * | **SECTION:** |
| **V.** | * | **JUDGE:** |
| **FEDERAL FLANGE, INC.,** | * | **MAGISTRATE:** |
| **Defendant** | * | |

**************************************

**COMPLAINT**

Plaintiff, LLOG Exploration Company, L.L.C. ("LLOG"), asserts the following Complaint against Federal Flange, Inc. ("Federal"), alleging as follows:

**PARTIES**

1.

Plaintiff LLOG is a Louisiana limited liability company with its principal place of business in the Parish of St. Tammany, State of Louisiana. Its sole member is LLOG Holdings, L.L.C., a Louisiana limited liability company with its principal place of business in the Parish of St. Tammany, State of Louisiana.

2.

Defendant Federal is a Delaware corporation doing and soliciting business in Louisiana within the jurisdiction of this Honorable Court and with its principal place of business in Texas.

**JURISDICTION AND VENUE**

3.

This Court has jurisdiction over this matter under 28 U.S.C. § 1331 in that this is a suit in connection with operations conducted on the Outer Continental Shelf in the Gulf of Mexico involving the exploration, development or production of the minerals of the subsoil and seabed of the Outer Continental Shelf, which is governed by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1301 *et seq.*, and specifically 43 U.S.C. § 1349(b)(1).

4.

Venue is proper in this district under 43 U.S.C. § 1349(b)(1) and under 28 U.S.C. § 1391(b)(2) because this is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

**GENERAL ALLEGATIONS**

5.

LLOG is engaged in the exploration, development and production of oil and gas. LLOG is a lessee and the operator of two Outer Continental Shelf leases, OCS-G-22868 and OCS-G-33735 (collectively, "the Leases"), which are located off the coast of Louisiana in the Gulf of Mexico at Mississippi Canyon 300 and at Mississippi Canyon 431, respectively. As operator, LLOG is currently and was at all pertinent times engaged in the completion and operation of two wells, designated as the Mississippi Canyon Block 300 #2 Well and the Mississippi Canyon Block 431 #2 Well, located on the Leases (the "MC 300 #2 Well" and the "MC 431 #2 Well").

6.

At all times pertinent herein, Federal was engaged in the manufacture and sale of Pipeline Jumper Connectors and Fittings and related items, including 6 x 6 target elbows, and was engaged in business with buyers located in Louisiana.

The Purchase Order Agreement

7.

On April 15, 2014, LLOG as "Buyer/Purchaser" and Federal as "Seller/Supplier" entered into Purchase Order Agreement No. 203105-08 Rev. 2 (the "Purchase Order") in connection with LLOG's purchase of goods from Federal, including without limitation, four 6 x 6 target elbows ("Target Elbows"), intended for subsea use in connection with the MC 300 #2 Well and the MC 431 #2 Well to connect pipe to a subsea manifold. A copy of the Purchase Order is attached as Exhibit "1."

8.

The Purchase Order contains "Terms and Conditions." With respect to the Terms and Conditions at issue here, the Purchase Order expressly states that:

¶8

> Supplier specifically warrants Goods to be free of defects. When Purchaser provides specifications for a particular purpose, Supplier warrants fitness for that particular purpose.

¶12

> Supplier shall maintain insurance in amounts and scope necessary to respond to Supplier's obligations assumed in this Purchase Order.

9.

In connection with Federal's sale of the four Target Elbows to LLOG, on 5/26/15 Federal provided a "Certificate of Compliance" dated 9/8/2014 ("Certificate") to LLOG's representative, Pinnacle Engineering, LLC. A copy of the Certificate of Compliance is attached as Exhibit "2."

The Certificate addresses the Target Elbows covered by the Purchase Order and states:

> We hereby certify that all material and work covered by this purchase order conform to the specifications, drawings and/or other description furnished or specified by purchaser, or furnished by seller and accepted by purchaser, and that such material and work are merchantable, of good material and workmanship and free from defect and are fit and sufficient for purpose intended.

The Defective Target Elbows

10.

Federal sold and delivered on or about 9/8/14 four Target Elbows to LLOG pursuant to the Purchase Order from original manufacturer heat number H-3501.

11.

After the Target Elbows were installed and used at the MC 300 #2 Well and at the MC 431 #2 Well, LLOG discovered non-apparent manufacturing defects in the Target Elbows installed at the MC 431 #2 Well that caused cracks in multiple pieces of that product.

12.

In subsequent testing conducted on LLOG's behalf, these cracks were sourced back to the manufacturing process for heat number H-3501, rendering all four of the Target Elbows sold and delivered to LLOG pursuant to the Purchase Order defective, unreliable, useless and dangerous.

13.

As a result of the defects in the Target Elbows intended for use in the MC 300 #2 and MC 431 #2 Wells, LLOG was forced to remove and replace the product manufactured and sold by Federal.

14.

As a result of the defective Target Elbows, LLOG has incurred substantial losses and damages estimated to be in excess of $5,000,000.00.

15.

On March 21, 2017, LLOG furnished Federal with a written Notice of Warranty Claims consistent with Paragraph 8 of the Purchase Order and with the Certificate.

**COUNT ONE – BREACH OF EXPRESS AND IMPLIED WARRANTIES**

16.

LLOG re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 hereof.

17.

Pursuant to Paragraph 8 of the Purchase Order, Federal expressly warranted that the Target Elbows were “to be free of defects” and would be “fit” for their “particular purpose.”

18.

Pursuant to the Certificate, Federal expressly warranted that the Target Elbows were “free from defect and are fit and sufficient for purpose intended.”

19.

Federal materially breached its express warranties by selling to LLOG Target Elbows that were defective in design, material and workmanship and that were therefore unreliable, useless and dangerous.

20.

Federal also materially breached its express warranties by selling to LLOG Target Elbows that did not conform to the terms and conditions of the Purchase Order and Certificate.

21.

Additionally, as part of the transaction, Federal represented and certified, and LLOG believed, that the Target Elbows Federal sold to LLOG "conform[ed] to the specifications, drawings and/or other description furnished or specified by purchaser, or furnished by seller and accepted by purchaser, and that such material and work are merchantable, of good material and workmanship and free from defect and are fit and sufficient for purpose intended." This representation, affirmation or promise was made to induce, and did induce, LLOG to purchase the Target Elbows and was intended by the parties to become part of the basis of the transaction.

22.

For the same reasons, Federal breached its express representation to LLOG with respect to the quality of the Target Elbows by its provision of weak, unstable and entirely useless Target Elbows.

23.

Additionally, in its sale of the Target Elbows to LLOG, Federal was obligated to provide LLOG with Target Elbows suitable for their ordinary use with Pipeline Jumper Connectors and Fittings.

24.

Federal materially breached its obligation to provide LLOG with goods suitable for their ordinary use by its provision of defective Target Elbows that were unsuitable for use with Pipeline Jumper Connectors and Fittings.

25.

Additionally, Federal knew of LLOG's intended purpose for the Target Elbows in connection with the operation of the MC 300 #2 Well and the MC 431 #2 Well.

26.

In its purchase of the Target Elbows, LLOG relied on the skill, expertise, judgment and superior knowledge of Federal and upon Federal's warranties and assurances of the Target Elbows' suitability for LLOG's intended purpose.

27.

After the Target Elbows were installed at the MC 300 #2 Well and at the MC 431 #2 Well, a purpose for which the Target Elbows were intended and for which LLOG was using them, LLOG, while conducting pressure tests, discovered that the Target Elbows were wholly unfit and useless for such purpose.

28.

Federal materially breached its warranties by selling to LLOG Target Elbows that were defective, unreliable, useless, dangerous and unfit for the purpose for which they were intended.

29.

Federal further breached its warranties to LLOG by its failure to properly and adequately specify, test and/or inspect the Target Elbows for fitness prior to their sale to LLOG.

30.

Additionally, Federal breached its warranties to LLOG because the Target Elbows manifested cracks after they were installed for their ordinary use, and, therefore, they were not fit for their ordinary use as required under La. Civ. Code art. 2524.

31.

As a direct and proximate result of Federal's breaches of warranty, LLOG has suffered and continues to suffer losses and damages, including without limitation, expenses and damages associated with: 1) the original purchase of the defective Target Elbows; 2) inspecting, removing and replacing the defective Target Elbows; 3) third party testing of the defective Target Elbows; and 4) all other damages, costs and expenses recoverable under the relevant contracts and law, all as will be shown at trial.

**COUNT TWO – BREACH OF CONTRACT**

32.

LLOG re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 hereof.

33.

In Paragraph 8 of the Purchase Order, Federal contractually agreed to sell to LLOG goods free from defects in design, material and workmanship.

34.

Paragraph 8 of the Purchase Order further sets forth Federal's contractual obligation to provide LLOG with goods in conformity with LLOG's terms and conditions.

35.

In the Certificate, Federal contractually represented that the Target Elbows were free from defects.

36.

Federal's failure to provide LLOG with Target Elbows free from defects in design, material and workmanship and its failure to provide LLOG with Target Elbows in conformity with LLOG's terms and conditions constitute breaches of the Purchase Order and Certificate.

37.

LLOG suffered and continues to suffer damages as a direct result of Federal's breaches of its contractual obligations under the Purchase Order and Certificate, entitling LLOG to recover damages from Federal for all losses it has sustained as a result of the defective Target Elbows.

**COUNT THREE – PRODUCT LIABILITY**

38.

LLOG re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 hereof.

39.

Federal is the designer, producer, maker, fabricator and manufacturer of the defective Target Elbows sold to LLOG by Federal.

40.

The Target Elbows that Federal manufactured are defective in that they are unreasonably dangerous for normal and intended use with Pipeline Jumper Connectors and Fittings.

41.

The Target Elbows that Federal manufactured additionally are unreasonably dangerous in that they did not conform to express warranties that Federal made about the product. In particular, Federal expressly warranted that the Target Elbows were merchantable, of good material and workmanship, free from defects and sufficient for their intended purpose. These express warranties by Federal induced LLOG to purchase and use the Target Elbows and were untrue. LLOG's damages resulting from the Target Elbows were proximately caused by these untrue express warranties.

42.

LLOG's use of the Target Elbows for its MC 300 #2 Well and its MC 431 #2 Well operations and production were reasonably anticipated uses of the product.

43.

LLOG was unaware of any of the defects in the Target Elbows and was unaware of any danger to LLOG either at the time of sale or at the time that the defective Target Elbows were placed into use.

44.

The defects in the Target Elbows were not obvious to LLOG, and LLOG could not have, by the exercise of reasonable care, discovered the defects and perceived their dangers.

45.

Federal, at the time the Target Elbows left its control, had knowledge of or should have had knowledge of the defects in the Target Elbows.

46.

At the time the Target Elbows left Federal's control, they deviated in a material way from Federal's specifications and performance standards for the product or from otherwise identical products manufactured by Federal.

47.

Indeed, the "Magnetic Particle Examination Report" dated June 16, 2014 attached to the Certificate reflects that the Target Elbows did <u>not</u> pass the test and were "Rejected." Nevertheless, Federal "certified" otherwise.

48.

Federal, under all applicable laws, including, but not limited to, the Louisiana Products Liability Act, La. R.S. 98:2800.51, *et seq.*, is strictly liable to LLOG for the manufacturing,

marketing, developing, testing, labeling, promoting and distributing of the defective Target Elbows. In particular, the Target Elbows were unreasonably dangerous in construction or composition, unreasonably dangerous in design, unreasonably dangerous because of inadequate warning and unreasonably dangerous because they did not conform to express warranties of Federal about the product.

49.

LLOG, under all applicable laws, including, but not limited to, the Louisiana Products Liability Act, La. R.S. 98:2800.51, *et seq*., is entitled to recover from Federal, as manufacture of the defective Target Elbows it sold to LLOG, all damages LLOG incurred and continues to incur caused by Federal's defective product.

**COUNT FOUR – REDHIBITION**

50.

LLOG re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 hereof.

51.

The Target Elbows intended for use in the MC 300 #2 Well and in the MC 431 #2 Well operation contain redhibitory vices and defects in construction and composition that render the Target Elbows totally useless for their intended purpose or, at the very least, so inconvenient that, had LLOG known of the vices and defects, LLOG would not have purchased the Target Elbows.

52.

The redhibitory vices and defects in the Target Elbows were non-apparent and existed at the time of Federal's delivery of the Target Elbows to LLOG.

53.

As the manufacturer and supplier of the Target Elbows, Federal knew, should have known and/or is deemed by law to have known, of the redhibitory vices and defects in the Target Elbows.

54.

The redhibitory vices and defects in the Target Elbows were not known to LLOG at the time of the sale.

55.

Indeed, in accordance with the Certificate, Federal represented to LLOG that the Target Elbows were “free from defect and [were] fit and sufficient for purpose intended.”

56.

At the time of the sale, Federal did not disclose the redhibitory vices and defects to LLOG.

57.

Further, at the time of LLOG’s purchase of the Target Elbows, the redhibitory defects were not apparent to LLOG, and LLOG, as a reasonably prudent buyer, could not have discovered the Target Elbows’ vices and defects.

58.

LLOG provided Federal with oral and written notice of the problems, vices and defects in the Target Elbows.

59.

After LLOG provided Federal with written notice of the vices and defects, Federal failed to adequately repair and remediate the Target Elbows to make them useful for their intended purpose by LLOG in the MC 300 #2 Well and in the MC 431 #2 Well.

60.

As a direct and proximate result of the redhibitory vices and defects in the Target Elbows, LLOG has suffered losses and damages, including those identified above, and has incurred attorneys' fees, for which Federal is legally responsible.

**COUNT FIVE – NEGLIGENCE**

61.

LLOG re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 hereof.

62.

Under the relevant contracts and law, Federal owed a duty of reasonable care to LLOG in connection with its sale of goods to LLOG for use in LLOG's well operations and production.

63.

Pursuant to Louisiana Civil Code article 2315 and by its sale of defective Target Elbows to LLOG for use in the operation and production of the MC 300 #2 Well and of the MC 431 #2 Well, Federal breached its duty of reasonable care owed to LLOG, including its duty to adequately test and inspect the goods it sold prior to their delivery.

64.

As a result of Federal's breach of its duty of reasonable care owed to LLOG, LLOG has suffered damages for which Federal is liable.

**COUNT SIX – DETRIMENTAL RELIANCE**

65.

LLOG re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 15 hereof.

66.

Federal made representations to LLOG that the Target Elbows were free from defects. Furthermore, Federal made representations and assurances to LLOG that its product would conform to the terms and conditions of LLOG, including without limitation, those set forth in the Purchase Order. Additionally, Federal made representations and assurances to LLOG that its products were fit for the purpose for which they were intended.

67.

Federal's representations in the Purchase Order and Certificate were erroneous and untrue.

68.

LLOG relied on these representations to its detriment when ordering and purchasing the Target Elbows from Federal for use in the MC 300 #2 Well and in the MC 431 #2 Well.

69.

Federal is liable for all expenses incurred and losses and damages suffered as a result of LLOG's detrimental reliance on Federal's erroneous and untrue representations.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, LLOG Exploration Company, L.L.C., prays that its Complaint be deemed good and sufficient, and that, after due proceedings, the Court enter judgment in favor of LLOG Exploration Company, L.L.C. and against Federal Flange, Inc., awarding damages, all

attorney's fees properly recoverable, as well as all other equitable and legal relief to which LLOG Exploration Company, L.L.C. may be found entitled.

Respectfully submitted,

*s/Carl D. Rosenblum*
CARL D. ROSENBLUM, T.A. (#02083)
ALIDA C. HAINKEL (#24114)
TYLER RENCH (#34049)
JONES WALKER LLP
201 St. Charles Ave., 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8296
Facsimile: (504) 589-8296
Email: crosenblum@joneswalker.com
Email: ahainkel@joneswalker.com
Email: trench@joneswalker.com

*Attorneys for Plaintiff,*
*LLOG Exploration Company, L.L.C.*