# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LLOG EXPLORATION COMPANY, LLC** | * * * | **CIVIL ACTION NO. 2:17-CV-02323, DIV. M(4)** |
| **VERSUS** | * * | **JUDGE BARRY W. ASHE** |
| **FEDERAL FLANGE INC.** | * * * * | **CHIEF MAGISTRATE JUDGE KAREN WELLS ROBY** |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

### MEMORANDUM IN SUPPORT OF SILBO INDUSTRIES, INC.'S MOTION TO QUASH OR LIMIT AND TO ENTER A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)

Third-party defendant Silbo Industries, Inc., moves this Court to quash and/or limit third-party defendant and third-party plaintiff CGP Manufacturing, Inc.'s Notice of Rule 30(b)(6) Deposition of Silbo Industries, Inc., and to enter a protective order, all in accord with F.R.Civ.P. 26(c). Silbo submits this memorandum in support in accord with LR 7.4.

I.      QUESTION PRESENTED

The question presented to this Court is whether to permit CGP to engage in discovery far afield from Judge Ashe's October 16, 2018, Order [R. Doc. 131], quoted below, and untied to Supreme Court and Fifth Circuit specific jurisdiction precedent. Or, whether to narrow the limited discovery to focus on Judge Ashe's inquiry: whether Silbo expected or was aware that the four *subject* target elbows it sold and delivered to CGP in Texas *would* be subsequently sold and resold and wind up in Louisiana. *Id.*

1

II.    INTRODUCTION

CGP brought Silbo into this case in May 2018 by a Third Party Complaint [R. Doc. 58],

but did not serve Silbo until July 17, 2018.  Silbo promptly moved to dismiss CGP's claim because

this Court lacks personal jurisdiction over Silbo.  *See* Silbo's Motion to Dismiss Pursuant to

F.R.Civ.P. 12(b)(2) – Lack of Personal Jurisdiction [R. Doc. 89].  CGP opposed Silbo's motion

and asked Judge Ashe to allow jurisdictional discovery before ruling on Silbo's motion to dismiss.[1]

Judge Ashe granted CGP's request for jurisdictional discovery, but in so doing Judge Ashe made

clear the question he wants answered and which question should inform, but currently does not,

CGP's proposed jurisdictional discovery:

> IT IS ORDERED that the parties shall have sixty (60) days from the date of this
> Order (that is, until December 17, 2018) to conduct jurisdictional discovery of Silbo
> and Gupta.  *The Court is primarily interested in discovery related to whether Silbo
> or Gupta delivered* **the subject target elbows or tees** *into the stream of commerce
> with an expectation or awareness that they* **would** *be purchased by or used by
> consumers in Louisiana.*

*See* October 16, 2018, Order [R. Doc. 131] (italics and bolding added).  That Judge Ashe intended

the permitted jurisdictional discovery be tailored to address the issue he posed is evidenced by the

short time period the Judge gave the parties to complete this discovery and to submit final briefs

on jurisdiction:  CGP has until December 17, 2018, to complete jurisdictional discovery of both

Silbo and of another third-party defendant, R.N. Gupta & Company, Ltd. (a company based in

India which also filed a motion to dismiss); requiring CGP to address not later than December 31,

2018, "the jurisdictional discovery issue as it bears upon the issue of personal jurisdiction under

the stream-of-commerce theory;" and granting Silbo (and Gupta) until January 14, 2019, to

respond.  *See* October 16, 2018, Order [R. Doc. 131].  Notwithstanding this narrow time period,

---

[1]  *See* CGP's Memorandum in Opposition [R. Doc. 102], p. 23, and CGP's Supplemental Memorandum [R. Doc. 118], p. 9, where CGP requested the Court to "allow jurisdictional discovery . . . ."

not until November 1, 2018, did CGP provide Silbo with a copy of its draft Notice of Rule 30(b)(6) Deposition with its requests for production of documents.

CGP's proposed, currently-written Notice of Rule 30(b)(6) Deposition of Silbo (and its requests for production of documents) goes far beyond seeking relevant and proportional jurisdictional discovery to address the issue Judge Ashe posed.  *See* CGP's Notice of Rule 30(b)(6) Deposition, exhibit "A."  As a result, and to abide by the time limits Judge Ashe imposed, Silbo asks this Court to quash and/or limit CGP's jurisdictional discovery to address the question to which Judge Ashe seeks an answer.  *See Ashevedo v. NBCUniversal Media, LLC*, 921 F.Supp.2d 573, 586, n. 36 (E.D. La. 2013) (when District Court Judge Africk permitted jurisdictional discovery, he stated "[a]ny dispute with respect to the methods needed to complete discovery may be directed to the U.S. Magistrate Judge.").[2]

## III.    THE UNDERLYING LITIGATION AND THE PARTIES

Silbo is incorporated in Delaware and has its principal (and only) place of business is in New Jersey.  It does not have an office in Louisiana nor employ anyone in Louisiana.  *See* Declaration of Alan C. Shalom Pursuant to 28 U.S.C. § 1746, exhibit "B" to Silbo's Motion to Dismiss.  [R. Doc. 89-3], ¶¶ 6 and 7.  In 2011, CGP ordered "a bulk purchase" of 560 Tees of various sizes from Silbo,[3] and Silbo arranged with manufacturer Gupta to ship those Tees from India to CGP, Houston, Texas, F.O.B.  *Id.*¶¶ 8 and 10.[4]  At no time did Silbo physically possess

---

[2] CGP did not specify the location of Silbo's proposed deposition, but during the parties' Rule 26(c) conference, CGP agreed that Silbo's corporate deposition would take place either in New Jersey or New York.  *See Salter v. Upjohn Co.*, 593 F.2d. 649, 651 (5th Cir.1979); *Clemons v. Hartford Ins. Co. of Midwest*, 2009 WL 1605154, * 5 (E.D. La. June 5, 2009) (Roby, M.J.); *Reich Album & Plunkett, LLC v. Wheat, Opperman & Meeks, P. C.*, 2007 WL 1655677, * 4 (E.D. La. June 4, 2007) (Roby, M.J.).

[3] *See* CGP's Cross-Claim and Third-Party Demand [R. Doc. 58], ¶ 5.

[4] Under the Uniform Commercial Code, title to the 560 Tees passed from seller Silbo to buyer CGP upon delivery of the 560 Tees to a Truck in Houston, Texas, in the Fall of 2011.  *See generally* V.T.C.A., Bus. & C. § 2.319(a)(2); V.T.C.A., Bus. & C. § 2.503(c); V.T.C.A., Bus. & C. § 2.50(a)(2).  *See Tyson v. Seaport Grain, Inc.*, 388 S.W.2d 731

or inspect the Tees.  *Id.*, ¶ 16.  Those Tees were shipped from India directly to Houston, Texas, *not* Louisiana, in 2011.  *Id.*¶¶ 12, 13, and 14.

CGP took possession of those 560 Tees upon their delivery in Houston in 2011 and placed them into CGP's inventory – in Houston.  *Three years later*, CGP took four Tees (the "subject target elbows") from its inventory, "machined" them, and sold them to its customer, defendant Federal Flange, Inc. – also in Houston.  *See* Declaration under Oath of Jorge Garcia, ¶ 7 [R. Doc. 102-1].[5]  Later on, Federal Flange further machined the four subject tees and sold them to its customer, LLOG Exploration Company, L.L.C.

Plaintiff LLOG leases and operates two wells germane to this lawsuit located off the Louisiana coast on the outer continental shelf.  *See* Complaint, ¶ 5 [R. Doc. 1].  LLOG sued defendant Federal Flange which had manufactured and sold pipeline jumper connectors, fittings, and related items, including the four subject target elbows, to LLOG.

According to LLOG's complaint (and these facts appear uncontroverted), Federal Flange delivered the four target elbows to LLOG on September 8, 2014.  LLOG then placed these four target elbows into its inventory.  Sometime in May or June of 2015, LLOG removed two of the four target elbows from its inventory and fabricated them in a "jumper."[6]  That jumper was then installed at one of LLOG's wells in June 2015.  The other two subject target elbows were likewise fabricated into a jumper and installed in the other well in August 2015.

---

(Tex.App.—Corpus Christi 1965); *also see* N.J.S.A. 12A:2-319(1)(b); N.J.S.A. 12A:2-503(3); N.J.S.A. 12A:2-509(1)(b).

[5]  CGP attached a Declaration of its vice-president, Jorge Garcia, to its opposition to Silbo's motion to dismiss.

[6]  According to LLOG, a "jumper" is an underwater length of piping used to connect a wellhead, situated on the seabed, to a subsea manifold.  A manifold, in turn, is a large piece of equipment, made up of pipes and valves, that is also situated on the seabed and is designed to transfer oil or gas from wellheads into larger pipeline systems.

In November 2016, LLOG conducted a pressure test of one of the jumpers and it failed. As a result of the failed test, LLOG claims it "discovered non-apparent manufacturing defects in the Target Elbows" and initiated this suit against Federal Flange on March 21, 2017. *See* Complaint, ¶¶ 10, 11, and 12 [R. Doc. 1].[7]

IV.    SILBO CHALLENGES PERSONAL JURISDICTION IN THIS COURT

Silbo moved to dismiss CGP's third-party complaint because the Court lacks general or specific jurisdiction over Silbo. *See* Motion to Dismiss. [R. Doc. 89]. As noted above, once Silbo arranged for Gupta to tender the 560 Tees to CGP in Houston, Texas, and CGP paid Silbo for those Tees, Silbo's actions relating to, involvement with, and knowledge about the 560 Tees of various sizes ended. Silbo did not know what CGP intended to do with any of the 560 Tees. Nor did Silbo know if or to whom CGP would resell any of the Tees or know to whom any subsequent purchaser of any of the Tees might then resell them. Silbo likewise lacked any knowledge about where any of the Texas-delivered Tees of varying sizes might wind up or how they would be applied for what use. *See* Declaration of Shalom, exhibit "B" to Silbo's Motion to Dismiss, ¶¶ 19 and 20 [R. Doc. 89-3]. Indeed, CGP itself denied it knew to what purpose the subject target elbows would be placed or where they would end up:

> **Defendant [CGP] had no knowledge of the identity of the end user [LLOG in Louisiana] of the product [the four subject target elbows] or the intended use of the product [the four subject target elbows].**

*See* CGP Answer to Restated, Supplemental and Amended Third Party Demand, Twelfth Defense [R. Doc. 46] (bolding added).

---

[7] Defendant Federal Flange later added more parties to this litigation as third-party defendants, namely CPG and G&S Non-Destructive Testing, Inc., both based in Houston, Texas. In November 2017, Federal Flange filed a Restated, Supplemental and Amended Third-Party Demand, adding Gupta as an additional third-party defendant. [R. Doc. 20], ¶ I(c). As noted in the text *supra*, CGP eventually cross-claimed against Gupta and added Silbo as a third-party defendant.

To establish personal jurisdiction over Silbo, CGP bears the burden to show either general or specific jurisdiction exists.  CGP concedes general jurisdiction does not attach in this forum over Silbo under the Supreme Court's recent decisions, *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).  *See* CGP Memorandum in Opposition to Silbo's Motion to Dismiss [R. Doc. 102], p. 7.

Silbo also challenged this Court's exercise of *specific* jurisdiction because whatever Silbo's unrelated contacts with Louisiana may be, they are insufficient under Supreme Court and Fifth Circuit precedent to establish specific jurisdiction *in this case*.  To establish specific jurisdiction over Silbo, CGP must tie Silbo's contacts with Louisiana to the controversy at hand.  *See, e.g., Goodyear*, 564 U.S. at 919 ("[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction'"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984) (This type of jurisdiction requires the suit to "arise out of or relate to the defendant's contacts with the forum"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (litigation must "result[ ] out of or relate to those [forum-state] activities]; *Alpine View Company Ltd. v. Atlas COPCO AB*, 205 F.3d 208, 215 (5th Cir. 2000) ("Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum *and the litigation results from alleged injuries that arise out of or relate to those activities*.") (Italics and underlying added).  Without such connection, "specific jurisdiction is lacking regardless of the extent of a defendant's **unconnected** activities in the State."  *Bristol Myers-Myers Squibb Co.*, ___ U.S. ____, 137 S.Ct. 1773, 1781 (2017) (emphasis added); *Waite v. All Acquisitions Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018).  And, citing to *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980), the United States Supreme Court recently reiterated the "primary concern" in determining whether

personal jurisdiction is present in a given case is "the burden on the defendant."  *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780.

Anticipating CGP would rely upon the Fifth Circuit's "stream of commerce" theory to establish specific jurisdiction, Silbo addressed this doctrine.  *See* Mem. [R. Doc. 89-1], pp. 15-20, and Reply Mem.  [R. Doc. 105], pp. 5-8.[8]

In *DePuy Orthopaedics, Incorporated, Pinnacle Hip Implant Products Liability Litigation*, 888 F.3d 753 (5th Cir. 2018), the Fifth Circuit summarized the earlier-decided *Ainsworth v. Moffett Engineering*, Ltd., 716 F.3d 174 (5th Cir. 2013), requirements necessary to establish specific jurisdiction over a foreign defendant under the "stream of commerce" theory:  CPG must show that Silbo "delivered the product that injured them 'into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id*., 778. Actions by third parties – who ultimately sent the four tees into Louisiana without the knowledge or action of Silbo – will not suffice to establish jurisdiction under the stream of commerce theory. *See, e.g., Eddy v. Printers House (P) Printing,* 627 Fed.Appx. 323, 327 (5th Cir. Oct. 2, 2015) (where the Fifth Circuit refused to extend personal jurisdiction under the stream of commerce theory over a foreign defendant whose product arrived in Texas, not through the act of the manufacturer, but because of "fortuitous" and "attenuated acts of third parties" – here CGP and Federal Flange).  Additionally, even under the Fifth Circuit's "stream-of-commerce" approach to

---

[8]  A plurality of Supreme Court Justices has twice rejected the stream-of-commerce theory, *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85 (2011) (plurality opinion); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-13 (1987) (plurality opinion).  *See also* McClure, Anthony R., <u>Recent Decisions Limit the Ability to Forum Shop</u>, 43 ABA Litigation News, p. 10, at p. 12 (Summer 2018) ("[T]he concept of 'stream of commerce' jurisdiction appears to be dead."); Dean, Richard A., and Cronin, Katya S., <u>The Last Nail in the Stream-of-Commerce Personal Jurisdiction</u>, For the Defense, p. 22, at p. 25 (January 2018) ("To sound the ultimate death knell of stream of commerce, the [Supreme] Court may well have to address the issue head-on and leave no doubt or wiggle room for the theory's most ardent supporters.").  Regardless, courts acknowledge "[t]he exact requirements of the stream of commerce theory are unclear."  *See, e.g., Seven Networks, LLC v. ZTE (USA), Inc.,* 2018 WL 2427147, * 2 (N.D. Tex. 5/30/2018) (Lynn, C.J.).

specific jurisdiction, to satisfy due process, "our inquiry is whether *the plaintiff's cause of action* arise[s] our of or result[s] from the defendant's forum-related contacts." *See In re Chinese-manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 549 (5th Cir. 2014) (emphasis original), citing *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 500 (5th Cir. 2012).

The stream-of-commerce theory allows personal jurisdiction to attach to a nonresident defendant that delivers its product into the stream of commerce with the expectation the product will be purchased by consumers in the forum State. The foreseeability required in the products liability context is *not* the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that it should reasonably anticipate being hauled into court there. *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266 (5th Cir. 2006). Mere foreseeability that a product sold in one state may end up in another state is insufficient to establish specific jurisdiction under the Fifth Circuit's "stream-of-commerce" approach. Otherwise, specific jurisdiction would lie anywhere a product ended up, without regard to Silbo's actions; without regard to the independent actions of CGP or Federal Flange; without regard the passage of time; and would eviscerate *Daimler*, *Goodyear*, *Walden*, and *Bristol-Myers Squibb*.

As discussed *infra*, CGP's proposed discovery overlooks the "end point" of the stream in this case, that is, the 560 Tees Silbo introduced into the "stream of commerce" ***exited*** the stream when the Tees reached CGP in Houston, Texas in 2011, and CGP put those Tees into its inventory for three years. Only through unrelated, separate actions of CGP and Federal Flange, both of which subsequently machined and reintroduced the four subject tees into the stream of commerce, did the subject target elbows wind up in Louisiana. But CGP's and Federal Flange's acts are not factually or legally attributable to Silbo.

8

With those observations, Silbo turns to the specific topics and requests for production of documents found in CGP's Rule 30(b)(6) Notice of Deposition, exhibit "A."

## V.   CGP'S RULE 30(B)(6) JURISDICTIONAL TOPICS AND DOCUMENT REQUESTS ARE OVERLY-BROAD AND NOT TAILORED TO THE JURISDICTIONAL INQUIRY JUDGE ASHE POSED

When Judge Ashe allowed jurisdictional discovery, he did not give CGP a carte blanche invitation to go fishing and trawl for information beyond what is necessary to establish personal jurisdiction *in this case* over Silbo under the Fifth Circuit's "stream-of-commerce" theory.[9] Instead, Judge Ashe made known he is interested in learning – and which instruction should inform CGP's jurisdictional discovery – whether Silbo "delivered the ***subject*** target elbows or tees into the stream of commerce with an expectation or awareness that they ***would be purchased or used by consumers in Louisiana***." *See* October 16, 2018, Order [R. Doc. 131] (emphasis added).

Rather than focus on deposition topics and requests for production of documents germane to the question Judge Ashe wants answered, CGP's Rule 30(b)(6) Deposition Notice goes far afield. CGP's Rule 30(b)(6) topics are quoted below:

1.      Corporate history and structure of Silbo.

2.      Identification of all Gupta product lines sold to Silbo and/or delivered at the instruction of Silbo in Louisiana and Texas during the period at issue.

3.      Identification of product lines of manufacturers [*sic*] of products sold to Silbo and/or delivered at the instruction of Silbo in Louisiana and Texas during the period at issue.

4.      Identification of all manufactures who sold products to Silbo and/or delivered at the instruction of Silbo products in Louisiana and Texas during the period at issue.

---

[9]  "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)).

5.    The method and manner for the distribution of products sold to Silbo and/or delivered at the instruction of Silbo in Louisiana and Texas during the period at issue.

6.    Identification of all agreements and/or limitations regarding the distribution of Gupta products in Louisiana and Texas during the period at issue.

7.    Identification of all Silbo customers to which products purchased from Gupta or any other company which were sold and/or delivered to a Louisiana entity or address in Louisiana during the period at issue, including the quantity of each product in terms of units and dollars during the period in question.

8.    Identification of all Silbo customers to which products purchased from Gupta or any other company which were sold and/or delivered for use in the oil and gas industry during the period at issue, including the quantity of each product in terms of units and dollars during the period in question.

9.    Identification of all marketing efforts, visits, publications, and/or other actions directed to Louisiana and/or the oil and gas industry during the period at issue, including travel to Louisiana or Texas related to the delivery or sale of products in Louisiana or Texas or for use in the oil and gas industry.

10.    Identification of all taxes paid in or to the State of Louisiana for the period at issue.

11.    Expectation that products sold by Silbo would be used/consumed in Louisiana and Texas or the oil and gas industry during the period at issue.

12.    Foreseeability that products it sold would be delivered and used Louisiana and Texas or in the oil and gas industry during the period at issue.

13.    Identification of all standards marked on Gupta products for sale or delivery in the United States and in particular Louisiana and Texas during the period at issue.

See CGP's Notice of Rule 30(b)(6) Deposition Silbo Industries, Inc., exhibit "A."

Likewise, CGP's document requests are untethered to the jurisdictional inquiry at issue:

1.    Documents referencing the corporate history and structure of Silbo.

2.    Documents referencing Gupta product lines sold to Silbo and/or delivered at the instruction of Silbo in Louisiana and Texas during the period at issue.

3.    Documents referencing the product lines of manufacturers of products sold to Silbo and/or delivered at the instruction of Silbo in Louisiana and Texas during the period at issue.

4.    Documents referencing manufactures [*sic*] who sold products to Silbo and/or delivered at the instruction of Silbo products in Louisiana and Texas during the period at issue.

5.    Documents referencing the method and manner for the distribution of products sold to Silbo and/or delivered at the instruction of Silbo in Louisiana and Texas during the period at issue.

6.    Documents referencing all agreements and/or limitations regarding the distribution of Gupta products in Louisiana and Texas during the period at issue.

7.    Documents referencing Silbo customers to which products purchased from Gupta or any other company which were sold and/or delivered to a Louisiana entity or address in Louisiana during the period at issue, including the quantity of each product in terms of units and dollars during the period in question.

8.    Documents referencing Silbo customers to which products purchased from Gupta or any other company which were sold and/or delivered for use in the oil and gas industry during the period at issue, including the quantity of each product in terms of units and dollars during the period in question.

9.    Documents referencing all marketing efforts, visits, publications, and/or other actions directed to Louisiana and/or the oil and gas industry during the period at issue, including travel to Louisiana or Texas related to the delivery or sale of products in Louisiana or Texas or for use in the oil and gas industry.

10.    Documents referencing taxes paid in or to the State of Louisiana for the period at issue.

11.    Documents referencing expectation that products sold by Silbo would be used/consumed in Louisiana and Texas or the oil and gas industry during the period at issue.

12.    Documents referencing the foreseeability that products it sold would be delivered and used Louisiana and Texas or in the oil and gas industry during the period at issue.

13.    Documents referencing all standards marked on Gupta products for sale or delivery in the United States and in particular Louisiana and Texas during the period at issue.

14.    Any document reviewed or consulted by the corporate designee in preparation for his/her testimony or relied upon or related to the Areas of Inquiry set forth above.

*Id.*

These overbroad, irrelevant, and burdensome topics and document requests do not address to the jurisdictional issue at hand, namely, whether Silbo "delivered the *subject* target elbows or tees into the stream of commerce with an expectation or awareness that they ***would be purchased or used by consumers in Louisiana***." *See* October 16, 2018, Order [R. Doc. 131] (emphasis added).

VI.   CGP'S OBJECTIONABLE TOPICS AND DOCUMENT REQUESTS

Because CGP's Rule 30(b)(6) topics and related requests for production of documents are not tailored to the jurisdictional question Judge Ashe proposed, this Court should quash and/or limit CGP's listed deposition topics and document requests to discovery necessary to answer the question Judge Ashe posed.  And to start, CGP's "period at issue" is too long and irrelevant.

CGP asks for information "during the period at issue."  CGP defines "period at issue" to mean:  "January 1, 2008 to October 31, 2018."  *See* CGP Notice of Rule 30(b)(6) Deposition, exhibit "A," ¶ H, p. 5.  This "time period" is too long, irrelevant, and burdensome.  Silbo sold and delivered the subject four target elbows as part of a larger bulk order of Tees to CGP in Houston in the Fall of 2011.  CGP then put the delivered Tees into its inventory, and not until 2014 did CGP take the four subject target elbows from its inventory, machine them, and sell them to its Houston customer Federal Flange.  Federal Flange thereafter "machined" the four subject target elbows and then sold them to its customer, LLOG.  LLOG fabricated the subject target elbows into jumpers in 2015.

CGP's request for information and documents post-2011 – when Silbo sold the four subject target elbows to CGP in Houston – is irrelevant to the jurisdictional question:  whether specific jurisdiction existed in 2011 to permit specific jurisdiction over Silbo, a non-resident who did not

sell the subject target elbows (which by then had been twice machined, once by CGP and again by Federal Flange) to anyone in Louisiana or know they would be sold there.

This Court should, at the outset, narrow the time period for all of CGP's topics and document requests to **January 1, 2011, through the December 31, 2011** – and then quash and/or limit them in accordance with the points below.

A.    *Topic no. 1 and request for documents no. 1 – Silbo's history and corporate structure – is overly broad, irrelevant, and already sufficiently answered*

Topic and request for documents no. 1, seeking information about the history and corporate structure of Silbo, is both overly-broad and irrelevant to the jurisdictional query Judge Ashe posed. Moreover, through the vice-president of the company's Declaration, Silbo has already provided CGP with sufficient information about Silbo's corporate history and structure:

> 5.    Silbo was founded in 1986 and has since engaged in the business of supplying various carbon and stainless-steel pipe, tubing, fittings, forgings, flanges and other steel products to various customers.
>
> 6.    Silbo  is incorporated in the State of Delaware and maintains its principal and sole place of business at 50 Chestnut Ridge Road, Montvale, New Jersey 07645.  See State of Delaware Certificate, attachment 1.
>
> 7.    Silbo does not have or maintain any office in the State of Louisiana nor does it have any employees in Louisiana.

*See* Shalom Declaration, ¶¶ 5, 6, and 7 [R. Doc. 89-3].  CGP has sufficient information about Silbo's corporate structure and its history.

B.    *Topics and requests for documents 2 through 6 and 9 through 13 suffer the same defect – sales to Texas are not germane*

Topics and requests for documents 2 through 6 and 9 through 13 all suffer from overbreadth and irrelevancy.  Sales of whatever products Silbo may have made to Texas customers are irrelevant to determine whether Silbo "delivered the ***subject*** target elbows or tees into the stream of commerce with an expectation or awareness that they ***would be purchased or used by***

*consumers in Louisiana*." *See* October 16, 2018, Order [R. Doc. 131] (emphasis added). The proper scope of jurisdictional discovery is to focus on whether – when Silbo delivered the *subject* target elbows "into the stream of commerce" – Silbo expected or was aware that these four elbows *would* be purchased or used by consumers in Louisiana.[10]  Irrelevant sales by Silbo to Texas customers is not germane to this jurisdictional inquiry.

     C.    *Topics and document requests for products other than the four elbow tees at issue are overly-broad and irrelevant*

Topics 2, 3, 4, 5, 6, 7, 8, 11, and 12, and the related document requests all suffer from the same overbreadth and search for irrelevant information, not germane or proportional to the jurisdictional discovery Judge Ashe allowed.  Whatever *other products* Silbo may have sold to other customers, either in Louisiana or in Texas, is not relevant to answer whether Silbo expected or was aware that the four subject target elbows it sold and delivered to CGP in Texas *would* (not maybe or possibly or foreseeably) be purchased or used by a customer in Louisiana.[11]

This lawsuit does not arise out of or relate to Silbo's sales of other products to persons in Louisiana.  Absent such a connection, specific jurisdiction in this Court over Silbo does not exist. *Daimler*, 571 U.S. at 127; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985); *Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010) ("Specific jurisdiction also requires a sufficient nexus between the nonresident's contacts with the forum and the cause of action");

---

[10]  Recall and as discussed in in the text *supra*, in answering Federal Flange's third-party complaint CGP claimed it "had no knowledge of the identity of the end user [LLOG in Louisiana] of the product [the four subject target elbows] or the intended use of the product."

[11]  "[F]oreseeability alone . . . has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause. * * *  If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there [...]; a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey [. . .]; or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there [. . .].  Every seller of chattels would in effect appoint the chattel his agent for service of process.  His amenability to suit would travel with the chattel. * * *  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-96 (1980).

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Gulf Coast Bank & Trust Company v. Designed Conveyor Systems, L.L.C.*, 717 Fed. Appx. 394, 339 n. 2 (5ᵗʰ Cir. Dec. 22, 1917) (noting that "unconnected activities" in a state does not justify specific jurisdiction over a claim unrelated to that conduct); *also see Pitts v. Ford Motor Company*, 127 F.Supp.3d 676, 686 (S.D. Miss. 2015) ("That Ford sells vehicles in Mississippi . . . is insufficient to find that Plaintiffs' claims "relate to" such sales . . . . [A]nd there is no evidence that Plaintiffs' injuries otherwise arose out of the sale of a Ford automobile in Mississippi."); *Patterson v. Blue Offshore BV*, 2015 WL 4096581, * 17 (E.D. La. July 6, 2015) (Brown, J.) ("[E]ven assuming that [Silbo] has purposefully directed its activities at [Louisiana], it would still be necessary to consider whether [third-party plaintiff CGP's] claims against it result from injuries arising from, or related to, [Silbo's] activities in [Louisiana]," *aff'd* 826 F.3d 231 (5ᵗʰ Cir. 2016).  Hence, delving into such sales – unconnected to the claims in this lawsuit – is unrelated to the jurisdictional inquiry Judge Ashe permitted.

Even under the Fifth Circuit's "stream-of-commerce" specific jurisdiction approach, CPG must prove that Silbo "delivered the injurious product "into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *DePuy*, 888 F.3d at 778.  But CGP's jurisdictional discovery is not tailored to ascertain such facts.  Instead, CGP's Notice of Rule 30(b)(6) Deposition paints with an overly-broad brush.  Simply put, CGP's topics 2, 3, 4, 5, 6, 7, 8, 11, and 12, and the related document requests are not customized to learn about, let alone establish, that Silbo delivered the *subject* target elbows or tees into the stream of commerce expecting or aware they would be purchased or used by consumers in Louisiana.¹²

---

¹² CGP's own evidence undermines its suggestion that Silbo expected or was aware that the four subject target elbows would be sold to a Louisiana company and used in Louisiana.  When opposing Silbo's motion to dismiss, CGP submitted the Declaration under Oath of Jorge Garcia, the vice president of CGP.  Among other things, Garcia attested

Instead, these topics and documents requests are overly broad and not relevant to gain facts necessary to establish that Silbo is amenable to "stream of commerce" jurisdiction under the Fifth Circuit's precedent.  As such, these topics and document requests should be quashed or limited solely to obtain information from Silbo about these four *subject* target elbows – the inquiry of interest to Judge Ashe.

D.      *Topic and request no. 9*

Topic and request no. 9 seeks information and documents about Silbo's "marketing efforts, visits, publications, and/or other actions directed to Louisiana and/or the oil and gas industry during the period at issue, including travel to Louisiana or Texas related to the delivery or sale of products in Louisiana or Texas or for use in the oil and gas industry."  First, any "marketing efforts" by Silbo in Texas is irrelevant to determine whether Silbo can be hauled into a Louisiana court over products it sold and delivered in Texas.[13]  Second, this topic and related document request is too broad – they fail to focus on the four subject target elbows, nor are they posed to learn whether Silbo expected or was aware that the four subject target elbows Silbo sold and delivered to CGP in Houston in the Fall of 2011; placed by CGP in its inventory; removed by CGP from its inventory three years later, machined, and then by CGP to another Houston company, Federal Flange; thereafter, further "machined" by Federal Flange and sold to its customer, LLOG in Louisiana; and which four target elbows LLOG placed into its inventory for one year before fabricating them

---

that after Silbo delivered 140 six inch tee forgings to CGP in Houston in 2011, CPG thereafter sold these forgings to its customers *in seven states and to four foreign countries.  See* Declaration under Oath of Jorge Garcia, ¶ 8 [R. Doc. 102-1].

[13]  There is a Texas state court case pending, albeit stayed, between many of the same parties over these target elbows, *Federal Flange, Inc. v. CGP MFG, Inc. and G&S Non-Destructive Testing, Inc.*, in the District Court of Harris County, Texas, 133rd – cause no. 2017-77289.  CGP is a party defendant in that case and although it has brought a claim against Gupta in that action, it has not sued Silbo in that Texas state court action.

into two jumpers, "*would be purchased or used by consumers in Louisiana.*" *See* October 16,

2018, Order [R. Doc. 131] (italics added).

This topic and request should be narrowed to seek whatever facts may exist to show (or

not) that Silbo expected or was aware that a Louisiana "consumer" (LLOG) would purchase and

use the four *subject* target elbows in Louisiana.

E.    *Taxes paid in or to Louisiana*

Topic and request for documents 10, asking about "taxes paid in or to the State of Louisiana

for the period at issue," is wholly irrelevant to whether Silbo expected or was aware that the four

subject target elbows it sold to CGP as part of a larger 560 Tee order delivered in Houston, F.O.B.,

and placed into CGP's inventory, would be used in Louisiana.  Whether Silbo paid or collected

sales taxes on unrelated products it may have sold to Louisiana buyers is not germane to this case.

Clearly, Silbo neither collected nor paid sales taxes or any other taxes to or in the State of Louisiana

over its sale and delivery of 560 Tess, including the four subject target elbows, to CGP in Houston,

Texas, in 2011.  Topic and request for documents no. 10 should be quashed.

F.    *Topic and request for documents no. 13 is merit, not jurisdictional, discovery*

Topic 13 and request for documents no. 13 appear to be merit, not jurisdictional, discovery:

13.    Identification of all standards marked on Gupta products for sale or delivery
in the United States and in particular Louisiana and Texas during the period at issue.

* * *

13.    Documents referencing all standards marked on Gupta products for sale or
delivery in the United States and in particular Louisiana and Texas during the
period at issue.

Asking about "standards marked on Gupta products" – whatever that means – are not

related to the personal jurisdiction issue, but instead is merit discovery, which is beyond the scope

of the jurisdictional discovery Judge Ashe permitted.[14]   Indeed, CGP and Silbo have not had a

Rule 26(f) conference and thus this limited jurisdictional discovery is permitted only by Judge

Ashe's Order.  *See Firefighters' Retirement System v. Royal Bank of Scotland*, PLC, 2016 WL

1254366, * 9 (M.D. La. Mar. 29, 2016) (Dick, J.) ("Plaintiffs . . failed to adequately support their

request for jurisdictional discovery.  Instead, the discovery sought by Plaintiffs goes directly to the

merits of the case").  *Also see Boustead v. Barancik*, 151 F.R.D. 102, 105-106 (E.D. Wis. 1993)

(holding plaintiffs' "jurisdictional" interrogatories and request for production of documents

"overly expansive" and not limited to the defendant's corporate structure – the "only relevant

inquiry for that case's jurisdictional discovery.).  This request is additionally overly-broad as it

seeks all standards marked on Gupta products for sale or delivery in the United States as well as

Louisiana and Texas.

VII.    THIS COURT SHOULD ORDER CGP TO REIMBURSE SILBO'S EXPENSES

         Depending upon whether and how this Court or CGP narrows its topics and document

requests, Silbo asks (or may further seek by subsequent motion, if appropriate) this Court to shift

the cost of complying with CGP's Notice of Rule 30(b)(6) deposition and its document requests

from Silbo to CGP – the party seeking the jurisdictional discovery.  Normally, the responding party

bears the expense to comply with discovery requests, but Silbo may invoke this Court's discretion

under Rule 26(c) to protect it from "undue burden or expense."  *See Southern Ute Indian Tribe v.

Amoco Production Co.*, 2 F.3d 1023, 1029-30 (10th Cir. 1993) (discussing both the old presumption

and the courts' powers to grant protection against "undue burden and expense" by shifting costs

of discovery to the requesting party as a condition of discovery).

---

[14]  The documents produced thus far show that Gupta's Tees were specified to meet the ASTM-A694-F65/MSS-SP76
standard.  *See* attachment 2 to Declaration of Shalom [R. Doc. 89-3].

In *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D. N.Y. 2002), the Court identified eight factors to consider for shifting the cost burden analysis:  (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.  *Id.*, 429.  These balancing factors apply regardless of a document's original medium, whether it be code or pulp.  *U.S. ex rel. Carter v. Bridgepoint Educ. Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015).

Silbo is not a large corporation with hundreds of employees.  Instead, Silbo has around 10 employees, including its principals.  If CGP's discovery requires the company's employees to work overtime or requires Silbo to hire part-time workers or outside vendors to gather and produce the information CGP seeks (or as may be limited by this Court), Silbo asks the Court to consider shifting the costs of these expenses to CGP – the party who seeks a "benefit" by acquiring the sought-after information.

At the bare minimum, CGP should pay for or reimburse Silbo the costs incurred in copying the documents requested.  *See, e.g., Tierno v. Rite Aid Corp.,* 2008 WL 3876131, * 1 (N.D. Cal. Aug. 19, 2008) (Henderson, J.) (citing 7 Moore's Federal Practice § 34.13[5] at 34-92 (2008) ("A party producing documents will ordinarily not be put to the expense of making copies for the requesting party")); *see also Bills v. Kennecott Corp.,* 108 F.R.D. 459, 462 (D. Utah 1985) ("[T]he requesting party pays for the costs of the copies"); *Clever View Investments, Ltd. v. Oshatz,* 233 F.R.D. 393, 394 (S.D.N.Y.2006) (stating the same); *Obiajulu v. City of Rochester, Dept. of Law,* 166 F.R.D. 293, 297 (W.D.N.Y.1996) (stating the same); *Lightguard Systems, Inc. v. Spot Devices,*

*Inc.*, 281 F.R.D. 593, 598 (D. Nev. 2010) (stating the same); *Obiajulu v. City of Rochester, Dept. of Law*, 166 F.R.D. 293, 297 (W.D. N.Y. 1996) (plaintiff may bring copying machine or pay defendant a reasonable copying cost).

VIII.   THIS COURT SHOULD ENTER A PROTECTIVE ORDER TO MAINTAIN SILBO'S CONFIDENTIAL AND PROPRIETARY INFORMATION

In addition to the relief Silbo seeks above, Silbo also asks this Court to enter a Protective Order pursuant to F.R.Civ.P. 26(c)(1)(G) to maintain as confidential any propriety or otherwise confidential or sensitive materials Silbo or any other party may produce in this litigation. More importantly, CGP competes to some extent with Silbo and the identify of Silbo's suppliers, customers, and Silbo's pricing structure is confidential and proprietary to Silbo and should not be shared with Silbo's competitors or customers. Thus, such confidential and propriety information should be redacted from any documents Silbo may produce as this Court ultimately may direct. Moreover, the identity of Silbo's other suppliers and/or customers is irrelevant to the Court's permitted-limited jurisdictional discovery, and the identify of such suppliers and/or customers should similarly be redacted. Finally, during the parties' Rule 26(c) conference on Thursday, November 8, 2018, counsel for CGP said his client is not opposed to entering a protective order to maintain the parties' confidential and proprietary information. Silbo will submit a proposed Protective Order for the Court's and the parties' consideration. In sum, Silbo shows good cause under F.R.Civ.P. 26(c) to support entering a protective order.

IX.   CONCLUSION

This Court should quash the overly-broad, irrelevant, and burdensome topics and document requests contained in CGP's current Notice of Rule 30(b)(6) Deposition, and instead order CGP to revise its discovery to focus upon obtaining information to answer the jurisdiction issue as Judge Ashe framed it, namely, to learn whether Silbo delivered the subject target elbows or tees into the

stream of commerce expecting or aware they would be purchased by or used by consumers in Louisiana.  *See* October 16, 2018, Order [R. Doc. 131].

Wherefore, Silbo Industries, Inc., seeks the following relief from this Court:

1.       An Order quashing third-party defendant and third-party plaintiff CGP Manufacturing, Inc.'s Notice of Rule 30(b)(6) Deposition of Silbo Industries, Inc., as beyond the scope of the limited jurisdictional discovery allowed by Judge Ashe's October 16, 2018, Order [R. Doc. 131];

2.       Entering an Order limiting the questions and scope of third-party defendant and third-party plaintiff CGP Manufacturing, Inc.'s Notice of Rule 30(b)(6) Deposition of Silbo Industries, Inc., to the jurisdictional issue Silbo outlined above, specifically to questions and document requests tailored to obtain facts about whether Silbo delivered the *subject* target elbows or tees into the stream of commerce expecting or aware they would be purchased by or used by consumers in Louisiana;

3.       Entering an Order limiting the requests for production of documents of third-party defendant and third-party plaintiff CGP Manufacturing, Inc.'s Notice of Rule 30(b)(6) Deposition of Silbo Industries, Inc., to the jurisdictional issue Silbo outlined above, specifically whether Silbo delivered the subject target elbows or tees into the stream of commerce with an expectation or awareness that these subject target elbows would be purchased by or used by a Louisiana consumer;

4.       Ordering CGP to reimburse Silbo the costs and expenses it incurs to respond to CGP's Rule 30(b)(6) Notice of Deposition (as the Court may limit), including the salaries of any employees who work overtime and/or the salaries of any

temporary employees hired to locate and produce the requested documents (as the Court may otherwise limit);

5.      Entering a Protective Order pursuant to F.R.Civ.P. 26(c)(1)(G) to maintain as confidential any propriety or otherwise confidential or sensitive materials Silbo Industries, Inc. and/or any other party may produce in this litigation, which would include not requiring Silbo to disclose the identity of other suppliers and/or customers or information dealing with Silbo's relationships with such other suppliers and/or customers, including but not limited to, Silbo's pricing structure; and

6.      Silbo Industries, Inc., further prays for any additional relief this Court may deem fit to grant under the Federal Rules of Civil Procedure and/or as equity allows.

Respectfully Submitted:

s/ *Kevin R. Tully*
**TERRY C. GAY - # 5993, T.A.**
**tcgay@christovich.com**
**KEVIN R. TULLY - #1627**
**krtully@christovich.com**
**Christovich & Kearney, LLP**
601 Poydras Street, Suite 2300
New Orleans, Louisiana  70130
Telephone:  504-561-5700
**Attorneys for Silbo Industries, Inc.**

## **C E R T I F I C A T E**

I hereby certify that a copy of the forgoing has been filed via CM/ECF for electronic

distribution to all counsel of record on the 13th day of November 2018.

*s/ Kevin R. Tully*
**TERRY C. GAY**
**KEVIN R. TULLY**

4829-5233-5994, v. 1