UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LLOG EXPLORATION COMPANY,
LLC

VERSUS

FEDERAL FLANGE, INC.

CIVIL ACTION

NO. 17-2323

SECTION M (4)

## ORDER & REASONS

Before the Court is a motion by third-party defendant R.N. Gupta & Company Limited ("RN Gupta") for summary judgment[1] to dismiss all claims asserted against it by third-party plaintiff Federal Flange, Inc. ("Federal"). Both Federal and third-party defendant, cross-claimant, and third-party plaintiff CGP Manufacturing, Inc. ("CGP") oppose the motion,[2] and RN Gupta replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion because unresolved issues of material fact preclude summary judgment at this juncture.

## I.    BACKGROUND

This case arises from Federal's sale to LLOG Exploration Company LLC ("LLOG") of four allegedly defective target elbows, which were then installed approximately 6,500 feet deep in the Gulf of Mexico on LLOG's wells.[4] Fifteen months after installation, LLOG discovered that two of the elbows had cracked.[5] Testing revealed that the cracks were caused by voids formed during the forging process, rendering suspect the other two target elbows machined from solid tee

---

[1] R. Doc. 219.
[2] R. Docs. 224; 226.
[3] R. Doc. 229.
[4] R. Doc. 219-1 at 2.
[5] R. Doc. 224 at 2-3.

forgings processed from the same steel at the same time.[6]  LLOG shut down its well operations to remove and replace all four of the target elbows, allegedly resulting in millions of dollars of damage.[7]

The four target elbows were the product of a series of transactions.[8]  First, Bhushan Power & Steel Limited ("Bhushan") sold raw steel material to RN Gupta.[9]  Second, RN Gupta "cut, heated, forged, quenched, and tempered the steel into specifically sized and shaped tee forgings."[10]  These solid tee forgings contained the voids that caused the target elbows to crack after LLOG installed them on its wells.[11]  Third, RN Gupta, through third-party defendant Silbo Industries, Inc. ("Silbo"), supplied its solid tee forgings to CGP.[12]  RN Gupta classified the forgings it sold as "semifinished" products that complied with certain oil-and-gas industry standards, including: (1) ASTM-A694, a standard specification covering "forged or rolled steel pipe flanges, forged fittings, valves, and parts suitable for use with high-strength transmission-service pipe"; and (2) MSS-SP75, an industry specification covering "factory-made, seamless and electric fusion-welded carbon and low-alloy steel, butt-welding fittings for use in high pressure gas and oil transmission and distribution systems, including pipelines ...."[13]  Thus, RN Gupta was aware that the solid tee forgings it sold had to be machined, or "hollowed out," to permit a substance to flow through them in their end use.[14]  Fourth, CGP hollowed out RN Gupta's solid tee forgings, machining them into

---

[6] R. Docs. 219-1 at 2 & n.1; 224 at 2-3; 226 at 3.
[7] R. Doc. 166 at 2.
[8] *See* R. Doc. 224 at 3-5.
[9] *Id.* at 4.
[10] *Id.* at 2.
[11] R. Docs. 219-1 at 2 n.1; 224 at 8.
[12] R. Doc. 219-1 at 5-6.
[13] R. Doc. 224 at 7.
[14] R. Doc. 226 at 7-8.

target elbows, and sold and delivered them to Federal.[15]  Finally, Federal machine finished the four target elbows, and sold and delivered them to LLOG, which installed them on its wells.[16]

LLOG sued Federal for breaches of express and implied warranties; breach of contract; violation of the Louisiana Products Liability Act ("LPLA"); redhibition; negligence; and detrimental reliance.[17]  Federal brought a third-party complaint against RN Gupta, CGP, and G&S Non-Destructive Testing, Inc. for indemnification or contribution.[18]  CGP filed a crossclaim against RN Gupta, and a third-party complaint against Silbo, for indemnification or contribution.[19] LLOG settled and dismissed its claims against Federal.[20]  Only third-party claims remain in this action.[21]

## II.   PENDING MOTION

RN Gupta argues that it is entitled to summary judgment on Federal's claims for product liability and redhibition because it is merely a supplier of raw material, not a manufacturer, and therefore it is exempt from liability under either theory.[22]  Only a manufacturer may be held liable under the LPLA, says RN Gupta, and it maintains that its tee forgings were the raw material that CGP and Federal used to manufacture a wholly different (and allegedly defective) product: the target elbows.[23]  Additionally, RN Gupta argues that Federal's claim for redhibition must fail because RN Gupta never manufactured, produced, or sold the defective product (the elbows) to Federal,[24] and a redhibition claim does not lie against a supplier of raw material, like itself.[25]

---

[15] R. Doc. 166 at 4.
[16] *Id.*
[17] R. Doc. 1.
[18] R. Docs. 9; 20; 166.
[19] R. Docs. 58; 166.
[20] R. Docs. 162; 164; 166.
[21] R. Doc. 166 at 4.
[22] R. Doc. 219-1 at 1-2.
[23] *Id.* at 11-12.
[24] *Id.* at 13-14.
[25] *Id.* at 14.

In opposition, Federal argues that the LPLA does apply because RN Gupta is, in fact, a manufacturer of the target elbows and not merely a supplier of raw material.[26]  Federal asserts that RN Gupta is a manufacturer because it knew, or, at the very least, reasonably anticipated, that its tee forgings would be hollowed out to become a product like the target elbows.[27]  Federal argues that RN Gupta is liable as a manufacturer under the LPLA because the voids that caused the target elbows to crack existed in the forgings when they left RN Gupta's control.  Federal also argues that RN Gupta is liable in redhibition not only because RN Gupta is a manufacturer, but also because a "buyer may bring [such] an action against all sellers in the chain of sales back to the original manufacturer," which includes RN Gupta.[28]

In its opposition, CGP joins Federal in urging that RN Gupta is a manufacturer under the LPLA because the target elbows were not wholly separate products from RN Gupta's tee forgings; rather, the tee forgings were solid pieces of metal from which the target elbows were machined.[29] CGP contends that the change from a tee forging to the finished target elbow is a "reasonably anticipated alteration or modification" that falls within the scope of the LPLA[30] and that the alleged defect in the target elbows was present from the time RN Gupta manufactured the tee forgings.[31] CGP also argues that RN Gupta is liable in redhibition because the target elbows were essentially the same product as the forgings and because the redhibitory defect in the elbows (the voids) was allegedly present from the time the forgings were manufactured.[32]

---

[26] R. Doc. 224 at 10-11.
[27] *Id.* at 11-12 (citing R. Doc. 219-13 at 25).
[28] *Id.* at 16-17 (quoting *Lovell v. Blazer Boats, Inc.*, 104 So. 3d 549, 553 n.3 (La. App. 2012)).
[29] R. Doc. 226 at 5.
[30] *Id.* at 7-8.
[31] *Id.* at 9.
[32] *Id.*

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id.* at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment

motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

## B.  Analysis

### 1.  The Louisiana Products Liability Act

In its third-party complaint, Federal asserts that to the extent LLOG establishes its entitlement to damages against Federal under the LPLA, then Federal is entitled to indemnity or

6

contribution from RN Gupta for the defective product it manufactured.[33]   The LPLA prescribes
"the exclusive theories of liability for manufacturers for damage caused by their products."  La.
R.S. 9:2800.52.  Under the LPLA, a plaintiff may only recover against a manufacturer "for damage
proximately caused by a characteristic of the product that renders the product unreasonably
dangerous when such damage arose from a reasonably anticipated use of the product by the
claimant or another person or entity."  *Id.*  9:2800.54(A).

To bring a successful claim under the LPLA, a claimant must prove that the defendant was
a "manufacturer" of the allegedly defective product that caused damage.  *See Tunica-Biloxi*
*Indians of La. v. Pecot*, 2006 WL 273604, at *3-4 (W.D. La. Feb. 2, 2006) (granting summary
judgment in favor of defendant who did not qualify as a manufacturer under the LPLA); *Matthews*
*v. Wal-Mart Stores, Inc.*, 708 So. 2d 1248 (La. App. 1998) (holding that plaintiff was not entitled
to recovery under the LPLA where she failed to prove defendant was a manufacturer of defective
lamp).   While a "manufacturer" is defined as "a person or entity who is in the business of
manufacturing a product for placement into trade or commerce," the statute also recognizes that
manufacturers include:

> (a) A person or entity who labels a product as his own or who otherwise holds
> himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic
> of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or
> part manufactured by another manufacturer.
>
> (d) A seller of a product of an alien manufacturer if the seller is in the business of
> importing or distributing the product for resale and the seller is the alter ego of
> the alien manufacturer.

---

[33] R. Doc. 20 at 10.

7

*Id.* 9:2800.53(1).  Moreover, the statute defines "manufacturing a product" as "producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." *Id.*

The statute limits recovery for damage resulting from "unreasonably dangerous" characteristics to four theories of liability: (1) unreasonably dangerous in construction or composition;[34] (2) unreasonably dangerous in design;[35] (3) unreasonably dangerous for failure to provide an adequate warning;[36] and (4) unreasonably dangerous for nonconformity to an express warranty.[37] *Id.* 9:2800.54(B).  The unreasonably dangerous characteristic "must exist at the time the product left the control of its manufacturer." *Id.* 9:2800.54(C).  The claimant bears the burden of proving each of these elements of an LPLA claim. *Id.* 9:2800.54(D); *see also Johnson v. Transwood, Inc.*, 2015 WL 5680369, at *3 (M.D. La. Sept. 25, 2015) (observing that an unreasonably dangerous condition is not presumed solely because an injury occurred).

"'Reasonably anticipated use' is the threshold LPLA element." *Matthews v. Remington Arms Co.*, 641 F.3d 635, 641 (5th Cir. 2011).  Without a reasonably anticipated use, a court need not analyze whether the product was unreasonably dangerous under one of the LPLA's four theories of liability. *Id.*  The LPLA defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."  La. R.S. 9:2800.53(7).  The Louisiana supreme court has explained "reasonably anticipated use" as follows:

> Notably, [the LPLA's] definition [of "reasonably anticipated use"] is narrower in scope than its pre-LPLA counterpart, "normal use," which included "all reasonably foreseeable uses and misuses of the product," but, like "normal use," what constitutes a reasonably anticipated use is ascertained from the point of view of the

---

[34] *See* La. R.S. 9:2800.55.
[35] *See id.* 9:2800.56.
[36] *See id.* 9:2800.57.
[37] *See id.* 9:2800.58.

> manufacturer at the time of manufacture.  Unlike its "normal use" counterpart, though, the use of the words "reasonably anticipated" effectively discourages the fact finder from using hindsight.
>
> "Reasonably anticipated use" also effectively conveys the important message that "the manufacturer is not responsible for accounting for every conceivable foreseeable use" of its product.  Likewise, "knowledge of the potential and actual intentional abuse of its product does not create a question of fact on the question of reasonably anticipated use."

*Payne v. Gardner*, 56 So. 3d 229, 231 (La. 2011) (internal citations omitted).

In denying that it is a manufacturer of the target elbows, RN Gupta claims that its only relationship to the finished, defective target elbows is one of provider of the raw material (*viz.*, the tee forgings) for the elbows' manufacture.[38]  RN Gupta argues that its tee forgings are wholly different and separate products from the elbows because the "[f]orgings left RN Gupta's possession as ... solid pieces of steel and not as the [e]lbows that are the basis of LLOG's claims against Federal."[39]  RN Gupta thus contends that it cannot be a manufacturer of the elbows because it never sold or placed them into trade or commerce; instead, it was merely the supplier of raw material that was later "significantly altered and manufactured"[40] into a different and defective final product that is the subject of the LPLA and redhibition claims.[41]

Federal argues that Bhushan is actually the provider of the raw material, the steel, used by RN Gupta to manufacture the tee forgings that were then machined and finished into the target elbows.[42]  Federal asserts that because RN Gupta knew or reasonably anticipated that its tee forgings would be "hollowed out so something can flow through it"[43] and used then for the transmission of pressurized oil and gas, it is a manufacturer of the elbows.[44]  In this way, RN Gupta

---

[38] R. Doc. 219-1 at 12.
[39] R. Doc. 229 at 4.
[40] *Id.* at 3 n.5.
[41] R. Doc. 219-1 at 1.
[42] R. Doc. 224 at 3.
[43] *Id.* at 6 (quoting R. Doc. 219-13 at 25) (internal quotation marks omitted).
[44] *Id.*

"understood that a defect in the material (the walls of the conduit) would render the product useless."[45]  CGP adds that, by definition, RN Gupta is a manufacturer of the target elbows because its tee forgings were manufactured as "semifinished" products[46] and placed into commerce to be refurbished and machined into a product like the target elbows,[47] meaning that the elbows and the tee forgings are essentially the same as they share the same body.[48]

The record on this motion for summary judgment demonstrates that there are disputed issues of material fact central to the determination whether RN Gupta is a manufacturer of the products alleged to be defective.  Federal and CGP present evidence from which a jury could reasonably conclude that RN Gupta is not simply a supplier of raw material, but rather a manufacturer of a product that was reasonably anticipated to be further processed and used in a particular and contemplated manner.  The voids in the forgings are alleged to have been present at the time they left RN Gupta's control and, so say Federal and CGP, were not introduced when the forgings were machined into the elbows.  Federal and CGP each point to summary-judgment evidence to support this claim and their position that RN Gupta reasonably anticipated that the forgings would be refurbished into a product like the elbows.[49]  Therefore, RN Gupta's motion for summary judgment is DENIED as to Federal's LPLA claim.

### 2.  Redhibition

In its third-party complaint, Federal asserts that to the extent LLOG establishes its entitlement to damages against Federal for a claim in redhibition, then Federal is entitled to indemnity or contribution from RN Gupta for the defective product it manufactured.[50]  Under

---

[45] *Id.*
[46] R. Doc. 226 at 10.
[47] *Id.* at 4-5.
[48] *Id.* at 5.
[49] R. Docs. 224 at 6-9; 226 at 6-9.
[50] R. Doc. 20 at 10.

Louisiana law, sellers impliedly warrant buyers against redhibitory defects, or vices, in the thing sold.  La. Civ. Code art. 2520.  A seller is liable to a buyer for a redhibitory defect when: (1) the thing the seller sold is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that had the buyer known of the defect, he or she would not have purchased it; (2) at the time of the sale, the thing sold contained a defect that was neither known nor apparent to the buyer; and (3) the seller was afforded an opportunity to repair the defect.  *See Alston v. Fleetwood Motor Homes of Ind., Inc.*, 480 F.3d 695, 699 (5th Cir. 2007).

"The degree of the seller's liability varies according to whether the seller knew of the defect.  If he did not know of the defect, the seller must have an opportunity to cure the defect, either through repair or replacement."  *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 899 (5th Cir. 2010) (citing La. Civ. Code arts. 2522 & 2531).  "If the seller cannot cure the defect, the buyer is entitled to rescission and the reasonable expenses occasioned by the sale."  *Id.*  But, if the seller knows of the defect, then "[t]he seller is entitled to no opportunity to cure, and the seller in bad faith must pay for damages, plus reasonable attorney fees."  *Id.* (citing La. Civ. Code arts. 2522 & 2545).  "Manufacturers are conclusively presumed to know of defects in their products."  *Id.* (citing La. Civ. Code art. 2545 cmt. d); *see also Young v. Ford Motor Co.*, 595 So. 2d 1123, 1126 (La. 1992); La. Civ. Code art. 2545 cmt. b.  "[A] redhibition claim does not require privity between the plaintiff and the manufacturer, because the manufacturer is liable for defects resulting from the original manufacture of the product."  *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 664 (E.D. La. 2014) (quoting *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, 2013 WL 990026, at *7 n.27 (E.D. La. Mar. 13, 2013)) (internal quotation marks omitted); *see also Aucoin v. S. Quality Homes, LLC*, 984 So. 2d 685, 692 (La. 2008).

"The warranty against redhibitory defects covers only defects that exist at the time of delivery." La. Civ. Code art. 2530. A buyer has a duty to inspect the item for defects. *See, e.g., Crow v. Laurie,* 729 So. 2d 703, 707-08 (La. App. 1999) (citing *Pursell v. Kelly*, 152 So. 2d 36, 41 (La. 1963)). Whether an inspection is reasonable depends on the facts of the case, including such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. *See Merlin v. Fuselier Constr., Inc.,* 789 So. 2d 710, 715 (La. App. 2001); *see also Lemaire v. Breaux,* 788 So. 2d 498, 501 (La. App. 2001) (requiring the buyer to conduct an investigation "as would be conducted by a reasonably prudent buyer acting under similar circumstances").

Although the LPLA is the exclusive remedy for damages caused by a product, redhibition claims are preserved to plaintiffs but "only to the extent the claimant seeks to recover the value of the product or other economic loss." *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So. 2d 112, 115 (La. App. 2004); *see also NAZ LLC v. Philips Healthcare*, 2018 WL 5847862, at *7 (E.D. La. Nov. 18, 2018) (discussing the LPLA's limiting effect on a redhibition claim, and stating "a plaintiff must bring an action under the LPLA to recover all damages caused by a product, except for damage to the product itself and economic loss sought under the Chapter 9 Redhibition articles").

RN Gupta denies liability in redhibition because "[r]edhibition is the avoidance of a sale because of some vice or defect in the thing sold,"[51] which here, argues RN Gupta, is the allegedly defective target elbows,[52] not the tee forgings it manufactured, produced, and sold.[53] Therefore, because RN Gupta did not sell the allegedly defective elbows to Federal, it asserts that it has no

---

[51] R. Doc. 219-1 at 13 (quoting *Dupree-Simpson Farms v. Helena Chem. Co.*, 682 So. 2d 838, 842 (La. App. 1996)) (emphasis omitted).
[52] *Id.* at 13-14.
[53] *Id.*

liability as a mere seller of raw material, the tee forgings.[54]   Relying on *Brookshire Brothers Holding, Inc. v. Total Containment, Inc.*,[55] RN Gupta argues that there are "no cases or law that would allow an action in redhibition against a component part or raw material supplier."[56]   RN Gupta contends that its connection to the target elbows was allegedly "far more distant"[57] than the supplier of raw material in *Brookshire*, where the court dismissed the redhibition claim against the supplier.[58]   Further, RN Gupta maintains that because it "had no knowledge, involvement or opportunity to test the [f]orgings for LLOG's desired application,"[59] it cannot be held liable for Federal's "fail[ure] to take the appropriate steps to ensure the [e]lbows it manufactured were properly constructed and tested."[60]

Federal and CGP, however, contend that RN Gupta is liable in redhibition because experts opine that the tee forgings RN Gupta manufactured had defects from the beginning: voids that caused the target elbows to crack after they were installed in the wells.[61]   Because the forging defects rendered the target elbows useless, Federal and CGP argue that the elbows would not have been purchased and, therefore, RN Gupta cannot escape liability for its defective product.[62]   RN Gupta's assertion that it only manufactured the tee forgings and not the target elbows is wrong, says CGP,[63] because the tee forgings and target elbows are not "wholly different products"[64] but rather the same "thing" for purposes of redhibition.[65]   CGP argues that the tee forgings are neither

---

[54] *Id.*
[55] 2006 WL 8442782 (W.D. La. Aug. 31, 2006).
[56] R. Doc. 219-1 at 15 (quoting *Brookshire*, 2006 WL 8442782, at *7) (internal quotation marks omitted).
[57] R. Doc. 229 at 6.
[58] R. Doc. 219-1 at 15.
[59] *Id.*
[60] *Id.*
[61] R. Docs. 224 at 17 (citing R. Doc. 219-1 at 2 n.1); 226 at 9.
[62] R. Docs. 224 at 17; 226 at 9.
[63] R. Doc. 226 at 9.
[64] *Id.* at 10.
[65] *Id.* at 10-11.

"raw material" nor a "component part" of the final target elbows; they "are essentially the same product."[66]  It maintains that "[t]he target elbow is nothing more than the [t]ee forging that has been hollowed out and machined so the 'semifinished' [t]ee forging can be used as a finished product for its industrial application."[67]

Federal adds that regardless of RN Gupta's denial that it is a manufacturer, under redhibition, "the buyer may bring an action against all sellers in the chain of sales back to the original manufacturer to rescind a sale for breach of implied warranty."[68]  It contends that "Louisiana courts have historically held that solidary liability arises among all sellers and manufacturers of the defective product in the chain of title"[69] and that, as the seller of the defective tee forgings, RN Gupta is solidarily liable for redhibitory defects resulting from the manufacture of the target elbows out of the forgings.[70]  Federal distinguishes *Brookshire* on the ground that the defendants there "were actual providers of raw materials used in a product,"[71] whereas here "[RN] Gupta manufactured the entire structure of the [t]arget [e]lbows"[72] from the raw steel material it purchased from Bhushan, shaping the steel into the forgings that "would be drilled through to become the entire body of the [t]arget [e]lbows."[73]  Thus, says Federal, RN Gupta is liable in redhibition as a manufacturer of the forgings, and ultimately the elbows, in the chain of manufacture and sale.[74]

---

[66] *Id.* at 11.

[67] *Id.* at 10.

[68] R. Doc. 224 at 17 (quoting *Lovell v. Blazer Boats Inc.*, 104 So. 3d 549, 553 n.3 (La. App. 2012)).

[69] *Id.* at 18 (quoting *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co.*, 151 F. Supp. 3d 715, 723 (E.D. La. 2015)).

[70] *Id.*

[71] *Id.*

[72] *Id.* at 19.

[73] *Id.* at 18-19.

[74] *Id.* at 19.

As is evident from this review of the parties' positions, there are several outstanding issues of material fact that preclude summary judgment on Federal's claim that RN Gupta is liable in redhibition, including, for example, whether the tee forgings and the target elbows are the same "thing" for purposes of redhibition, whether RN Gupta is a supplier of raw material, such that it cannot be liable in redhibition, or a manufacturer, such that it can, and whether RN Gupta is the original manufacturer of the defective product in the chain of title. These disputes involve multiple issues of fact that preclude summary judgment at this juncture. Therefore, RN Gupta's motion for summary judgment regarding the redhibition claim is DENIED.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that RN Gupta's motion for summary judgment (R. Doc. 219) is DENIED.

New Orleans, Louisiana, this 15th day of September, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE